IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

**BRANDON MICHAEL STOCKER,**

      **Petitioner,**

**v.**                                   **Case No. 3:16cv656-RV/CAS**

**JULIE JONES, Secretary,**
**Florida Department of Corrections,**

      **Respondent.**

_____/

## REPORT AND RECOMMENDATION

On December 8, 2016, Petitioner Brandon Michael Stocker, a state inmate proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 1. On January 21, 2018, Respondent filed an answer, with exhibits. ECF No. 26. Petitioner has not filed a reply, although given the opportunity to do so. *See* ECF No. 25.

The matter was referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(B). After careful consideration, the undersigned has determined no evidentiary hearing is required for the disposition of this matter. *See* Rule 8(a), R. Gov. § 2254 Cases. The pleadings and attachments before the Court show the petition should be denied.

## **Procedural Background**

By information filed March 14, 2012, the State of Florida charged

Petitioner Brandon Stocker with five counts in connection with events that

occurred on or about March 8, 2012:  (1)  carjacking with a firearm or

deadly weapon (knife), in violation of sections 812.133(2)(a) and 775.087,

Florida Statutes; (2) driving while license cancelled, suspended, or

revoked, in violation of section 322.34(2)(c), Florida Statutes; (3) attempted

burglary of a structure while armed with explosives or dangerous weapon

(knife), in violation of sections 810.02(1)(b) and (2)(b), Florida Statutes; (4)

aggravated fleeing or attempting to elude a law enforcement officer by

leaving the scene of an accident, causing injury or damage, in violation of

section 316.1935(4), Florida Statutes; and (5) resisting an officer without

violence, in violation of section 843.02, Florida Statutes.  Ex. A at 46-47.[1]

On February 13, 2013, the State filed an amended information, reordering

the counts and changing the carjacking charge, in Count 1, to carjacking

without a weapon, in violation of section 812.133(2)(b), Florida Statutes.

*Id.* at 93-94.

---

[1]Hereinafter, all citations to the state court record, "Ex. –," refer to exhibits submitted with Respondent's answer, ECF No. 26, and correspond to the page numbers used by Respondent.

The next day, February 14, 2013, a hearing took place in circuit court on a motion to withdraw. *Id.* at 175, 185. During the hearing, Petitioner Stocker's court-appointed counsel, Martin Knopes, indicated he had filed a motion to withdraw from representing Stocker at Stocker's direction "based upon a conversation I had with him on Thursday" and "once that's addressed, then if it's denied, [counsel would] need some additional time today to talk to [Stocker] before [he was] prepared to definitely say we don't have a deal or we might have a deal." *Id.* at 176; *see id.* at 180. The judge responded that, because counsel was court-appointed, he could not grant a bare-bones motion to withdraw. *Id.* at 177-78. Stocker then asked to speak and was sworn in as a witness. *Id.* at 178-79. Stocker stated that he felt counsel was not effective and was not doing anything for him. *Id.* at 179. The judge indicated Stocker would "have to file a motion for Mr. Knopes to not represent [him] anymore because he's ineffective," and once he filed such motion, a hearing would occur on it. *Id.* at 179-80. Stocker stated, "I did wrong, but I just want justice." *Id.* at 182. The judge ruled he was "not going to grant the motion to withdraw as it's drafted," because it was filed by counsel at Stocker's direction. *Id.* at 184, 186. The judge explained how things would proceed: "Either we – we go to trial on February 25th, or we can go to trial if the State – if their witnesses can be

here for March 4th, that's the next week, and then we can have an

evidentiary hearing on February – probably February 26th, which would be

that Tuesday, if Mr. Stocker files a motion for ineffective assistance of

counsel." *Id.* at 184-85.  The following then transpired:

> MS. MASON [prosecutor]:  I do have a murder trial set with Judge Stone that week, but I'm not (unintelligible) – I'll know tomorrow for sure if that's going.

> But since the Court is currently denying the motion to withdraw, could we pass this until later in the docket, for Mr. Stocker and Mr. Knopes to discuss how they want to proceed, whether it's of benefit –

> THE COURT:  Okay.  Because the only thing before the Court is the motion to withdraw –

> MS. MASON:  Right.

> THE COURT:  – that's denied.

> MR. STOCKER:  Your Honor –

> MS. MASON:  Judge, I'm sorry, one other thing.  The State did file an amended Information yesterday in Case Number 12CF485.  That is the case that would proceed to trial on the 25th.  I provided a copy of that to Mr. Knopes.  We sent one over to the clerk, but I'm happy to give her my copy.  It could aid in their discussions this morning, so I wanted to go ahead and put that on the record.

> . . . .

> THE COURT:  Okay.  Mr. Stocker, it's my understanding that you're going to meet with Mr. Knopes.  If Mr. Knopes wants to bring you back before the Court, then I'll certainly do that.

> Otherwise, I'll see you on – on March – I'm sorry – on February
> 25th.

*Id.* at 185-86.  Stocker disagreed with the prosecutor's statement that

Knopes was diligently representing him and indicated he wanted to

represent himself "if you ain't going to let me get another attorney" because

he was "not going to trial with this man representing me."  *Id.* at 187.

Stocker stated he would "rather do my own law work if you're going to give

me somebody who basically – this man came in there and cussed me out

without cuss words.  He fussed me out -- . . . told me he's aggravated and

tired of dealing with this case."  *Id.*  The judge then indicated he would "set

it for a hearing" at the end of that day and instructed Stocker that "[i]f you

wish to file a motion for ineffective assistance of counsel, you'll need to do

that in writing."  *Id.* at 188-89.

The transcript reflects that "other court matters were discussed, and,

after a recess," additional proceedings took place in Stocker's case later

that same day.  *Id.* at 189.  In particular, Knopes explained that, earlier that

day, he had filed a motion to withdraw, but "[a]t this point in time, based

upon discussions with Mr. Stocker, we are going to withdraw that" and

"[t]here's no need for a hearing at this point."  *Id.* at 189-90.  Knopes further

explained "we've entered into some plea negotiations with the State."  *Id.* at

190.

> MR. KNOPES:  . . . In reality, what's going to happen, in exchange for our plea to Count II, III, -- II, III, and IV, in 12CF485 –
>
> MS. MASON:  And a lesser included Count I.
>
> MR. KNOPES:  Right.  The lesser included of robbery in Count I – the State's going to nolle pros the other two case numbers, which are 12-586 and 11-2347, with the understanding – and, Judge, I know you don't have this in front of you, but I'm going to read it and then hand it to you, and then we'll – if we got to cover it again, we will but –
>
> THE COURT:  Okay.
>
> MR. KNOPES:  – with the understanding that Mr. Stocker understands that – that he's going to be classified a PRR, and that he's going to be classified an HFO offender; that he will receive a 15-year sentence, which is day-for-day minimum mandatory, and then it's left up to the Court at a sentencing hearing to decide what to do with the next 15 years.  It's – it's a total cap of 30, 15 as a PRR, minimum mandatory, and then the Court could give him 15 years of probation following that 15-year sentence, or the Court could give him 15 years DOC.  It's up to the Court, as a result of the sentencing hearing.
>
> THE COURT:  Okay.
>
> MR. KNOPES:  And I just wanted to make sure that was clear on the record. . . .

*Id.* at 189-91.

The court then proceeded with the plea colloquy and accepted the plea. *Id.* at 192-201. During the course of the colloquy, the judge confirmed that Stocker felt able to make judgments and decisions. *Id.* at 193. The judge confirmed Stocker understood the possible sentence he could receive under the plea agreement:

THE COURT: Okay. So if I accept this plea, Mr. Stocker, what – tell me what you may be sentenced to, or tell me what the agreement is with the Sate as far as the Department of Corrections.

MR. STOCKER: PRR, 15 years, and then the HFO is at your discretion. I mean, that's my understanding of it.

THE COURT: Okay. The – from what I understood is that the HFO would be part of the plea, as far as what – from my understanding is that you'd be sentenced to 15 years with the Department of Corrections, and that would be a minimum mandatory, right? So that would be – you'd serve it time – day for day.

MR. STOCKER: Correct.

THE COURT: And then there would be a cap of 30 years. So the Court could sentence you to – to up to 30 years, in addition to the 15-year minimum mandatory.

MR. STOCKER: I wasn't aware of that. That's 45.

MS. MASON: No.

THE COURT: Am I misinterpreting that?

MR. KNOPES: Additional 15.

MS. MASON:  It could be 15 plus 15, sir –

THE COURT:  Right.

MS. MASON:  – for a total of 30.

THE COURT:  Correct.

MS. MASON:  Okay.  Not a total of 45.

THE COURT:  It's a – it's a 30-year cap, which is included within – I mean, the 15-year minimum mandatory is included in that 15.  So you could be sentence up to an additional 15 years, with a 30 – you could be sentenced to an additional 15 years. Do you understand that?

MR. KNOPES:  15 PRR, and possibly up to 15 additional years –

MS. MASON:  And, Judge, he could be –

MR. KNOPES:  – for a total of 30.

MS. MASON:  He could be sentenced to no more than 30 years total.

THE COURT:  Correct.  Mr. Stocker, do you understand that?

MR. STOCKER:  I understand.

*Id.* at 193-95.  Stocker asked a question about the PRR and HFO

designations and discussion took place on the record.  *Id.* at 95-98.  The

following then transpired:

*THE COURT:  Okay.  So, Mr. Stocker, here's how I understand it, and I ask the attorneys to correct me if I'm wrong:*

*You're going to be sentenced to at least 15 years in prison, minimum mandatory, which means you'd serve day for day.*

*MR. STOCKER:  Right.*

*THE COURT:  You could be sentenced to an additional 15 years.  And you'll have those two designations, no matter what.*

*MR. STOCKER:  Right.*

THE COURT:  Okay.  Do you have any questions or any concerns?  Do you understand the plea agreement?

MR. STOCKER:  My only question, my only concern is – the question is, you're not going to decide that right now, right, the other –

THE COURT:  No, sir.

MR. KNOPES:  Not today.

MR. STOCKER:  All right.  Well, my only concern is that you would take in consideration my remorse for all this, and maybe run it concurrent.

THE COURT:  Take into concern your what?

MR. STOCKER:  Consideration my remorse for, you know, all that – that has taken place, and the position I was in when I – when I committed the crime.  I was not, you know, understanding the severity of what I did, but I did what I did and I'm guilty of that.  And, you know, I don't want to waste nobody's time going on trial for something I know I did.

THE COURT:  Okay.

*Id.* at 198-99 (emphasis added). The judge confirmed that Stocker read through the plea agreement, understood the agreement, and signed the agreement. *Id.* at 200. Stocker confirmed that he discussed it with counsel and counsel answered all his questions. *Id.* Stocker stated he was satisfied with counsel's representation. *Id.* Stocker agreed that no one had forced, threatened, or coerced him into entering the plea. *Id.* The prosecutor indicated the State had no exonerating DNA evidence. *Id.* The following then transpired:

> THE COURT: Okay. Mr. Stocker, because of what you stated this morning, I just want to make sure. You know, this morning you talked about you want to represent yourself, you talked about wanting to fire Mr. Knopes. Are you clear-headed? Do you – do you have any reservations on that? Do you feel like this is in your best interest now?
>
> MR. STOCKER: I do.

*Id.* at 200-01. Additional discussion took place regarding the possible sentences if Stocker proceeded to trial and was convicted on all counts. *Id.* at 201-06. The court confirmed that, if Stocker proceeded to trial and was found guilty, the lowest possible sentence he would receive would be 30 years, and the maximum could be 120 years. *Id.* at 205-06. With the plea, the maximum sentence he could receive is 30 years. *Id.* at 206. Stocker confirmed that he understood this. *Id.* The court accepted the plea. *Id.*;

*see id.* at 201.  The court set sentencing for April 9, 2013.  *Id.* at 207.  The written plea agreement, entered that same day, February 14, 2013, reflects the State agreed to reduce the carjacking charge to robbery and drop the charge for resisting without violence, and the sentence imposed would include a 15-year mandatory minimum, with a maximum of 30 years.  *Id.* at 95-99.

On or about February 17, 2013, Stocker filed a pro se motion to terminate the representation of attorney Knopes.  *Id.* at 100-02.  Stocker also moved to withdraw his plea.  *Id.* at 106-07.

On February 28, 2013, Knopes filed a motion to withdraw as counsel based on "a breakdown in communication" and requested the court appoint another attorney for Stocker.  *Id.* at 110.  By order rendered March 20, 2013, the court granted Knopes' motion to withdraw and appointed Donald Witmyer to represent Stocker.  *Id.* at 111.

On July 9, 2013, a hearing took place on Stocker's motion to withdraw his plea.  *Id.* at 266-322.  Witmyer represented Stocker during the hearing.  *See id.*  Stocker testified at the hearing.  *Id.* at 270-301.  Knopes also testified.  *Id.* at 301-20.  At the conclusion of the hearing, on the record, the judge denied the motion "[p]rimarily based upon the transcript

[of the hearing held February 14, 2013,] that was provided and that is filed in the court case." *Id.* at 320.

On August 21, 2013, the court sentenced Stocker to a total of 30 years in prison. *Id.* at 215-24; *see id.* at 323-55 (transcript of sentencing hearing). Stocker, through counsel, appealed his conviction and sentence, assigned case number 1D13-4498 in the First District Court of Appeal (DCA), and argued the trial court abused its discretion in denying the motion to withdraw the plea. Ex. B. The First DCA affirmed the case per curiam, without a written opinion, on March 6, 2014. Ex. D; Stocker v. State, 134 So. 3d 457 (Fla. 1st DCA 2014) (table). Stocker filed a motion for rehearing, which the First DCA denied by order on April 21, 2014. Ex. E.

On May 28, 2015, Stocker filed a Motion for Post Conviction Relief Pursuant to Florida Rule of Criminal Procedure 3.850. Ex. F at 1-14. Stocker raised three grounds: (1) his plea was involuntary and void because the court did not establish a factual basis; (2) defense counsel was ineffective because he did not advise Stocker of a viable defense; and (3) neither the court nor defense counsel advised him he was waiving his right to appeal by entering the plea. *Id.* The State filed a response. *Id.* at

16-76.  In an order rendered February 23, 2016, the state post-conviction

court denied relief.  *Id.* at 82-90.

Stocker appealed the denial of post-conviction relief to the First DCA,

assigned case number 1D16-1845, and he filed an initial brief.  Ex. G.  On

September 14, 2016, the First DCA per curiam affirmed the case without a

written opinion.  Ex. I.  Stocker filed a motion for rehearing, which the court

denied by order on November 23, 2016.  *Id.*  The mandate issued

December 9, 2016.  *Id.*

As indicated above, on December 8, 2016, Stocker filed a petition for

writ of habeas corpus pursuant to 28 U.S.C. § 2254 in this Court.  ECF No.

1.  He raises three grounds:

(1)  **Trial Court Error – No Factual Basis for Plea**:  "The trial
     court denied [P]etitioner due process under Amend. XIV,
     U.S. Const. by failing to establish a factual basis for the
     offense of Att. Armed Burglary rendering [P]etitioner's plea
     involuntarily entered."  *Id.* at 5.  "The trial court erroneously
     relied on [P]etitioner's possession of two standard pocket
     knives excluded from the statutory definition of a 'weapon'
     under Florida Statutes 790.001(13), [b]ecause the two
     pocket knives were never used, displayed, or threatened to
     be used at any time during the alleged offense."  *Id.* at 5-6.

(2)  **Ineffective Assistance of Counsel – Viable Defense**:
     Defense counsel "failed to advise [P]etitioner that he had a
     viable defense for trial as to the Att. Armed Burglary charge
     when the prosecution[']s case rested on the grounds that
     [P]etitioner was found in possession of two common pocket
     knives that fail to meet the statutory definition of a weapon

under Florida Statutes 790.001(13)." *Id.* at 6-7. "Petitioner asserts that had counsel advised him of this viable defense that he would not have entered into the plea agreement and would have elected to take his case to trial." *Id.* at 6.

(3) **Trial Court Error and Ineffective Assistance of Counsel**: "Petitioner asserts that because neither the trial court or his court appointed counsel informed him that by entering the plea agreement he would waive his right to direct review of the judgment then he was denied due process of law under the 14th Amend. And denied effective assistance of counsel under the Sixth." *Id.* at 9.

Respondent has filed an answer, with exhibits. ECF No. 26. Stocker has not filed a reply, although given the opportunity to do so. *See* ECF No. 25.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides, in pertinent part:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding.

28 U.S.C. § 2254(d).  *See, e.g.,* Cullen v. Pinholster, 563 U.S. 170, 180-83

(2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011).  "This is

a 'difficult to meet' and 'highly deferential standard for evaluating state-

court rulings, which demands that state-court decisions be given the benefit

of the doubt.'"  Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562

U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)).

This Court's review "is limited to the record that was before the state court

that adjudicated the claim on the merits."  *Id.*

For claims of ineffective assistance of counsel (IAC), the United

States Supreme Court has adopted a two-part test:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984).  To demonstrate

ineffectiveness, a "defendant must show that counsel's performance fell

below an objective standard of reasonableness."  *Id.* at 688.  To

demonstrate prejudice, a defendant "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

The Strickland test applies to IAC claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 57-58 (1985). When a defendant has entered a plea while represented by counsel, as here, "the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). "[A] defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.'" *Id.* at 56-57 (quoting Tollett v. Henderson, 411 U.S. 258 (1973)). That a plea is one of nolo contendere, as here, rather than guilty, does not warrant a different analysis for purposes of habeas corpus. *See* North Carolina v. Alford, 400 U.S. 25, 35-37 (1970); *see also* Florida v. Royer, 460 U.S. 491, 495 n.5 (1983) (explaining that "[u]nder Florida law, a plea of nolo contendere is equivalent to a plea of guilty").

For pleas, the first part of the Strickland test "is nothing more than a

restatement of the standard of attorney competence" set forth in <u>Tollett</u> and <u>McMann</u>.  <u>Hill</u>, 474 U.S. at 58-59.  The test's second part, the prejudice requirement, in the plea context, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process."  *Id.* at 59.  "In other words, to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  *Id.*

"If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'"  <u>Tollett</u>, 411 U.S. at 266 (quoting <u>McMann</u>, 397 U.S. at 771).  Further, a defendant who enters a plea may not raise claims relating to alleged deprivations of constitutional rights that occurred prior to entry of the plea, but rather such a defendant may only attack the voluntariness of the plea by showing counsel's advice fell below the <u>McMann</u> standard:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process.  When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.  He may only attack the voluntary and intelligent character

of the guilty plea by showing that the advice he received from
counsel was not within the standard set forth in <u>McMann</u>.

<u>Tollett</u>, 411 U.S. at 267.

For this Court's purposes, importantly, "[t]he question 'is not whether
a federal court believes the state court's determination' under the <u>Strickland</u>
standard 'was incorrect but whether that determination was unreasonable –
a substantially higher threshold.'" <u>Knowles</u>, 556 U.S. at 123 (quoting
<u>Schriro v. Landrigan</u>, 550 U.S. 465, 473 (2007)).  "And, because the
<u>Strickland</u> standard is a general standard, a state court has even more
latitude to reasonably determine that a defendant has not satisfied that
standard."  *Id.*  It is a "doubly deferential judicial review that applies to a
<u>Strickland</u> claim evaluated under the § 2254(d)(1) standard."  *Id.*

Here, the relevant state court decision is the First DCA's per curiam
affirmance, without opinion, of the trial court's summary denial of
Petitioner's Rule 3.850 motion.  In reviewing the reasonableness of the
state court's determination, which in this case involves no written opinion,
this Court focuses "on the ultimate legal conclusion that the state court
reached and not on whether the state court considered and discussed
every angle of the evidence."  <u>Gill v. Mecusker</u>, 633 F.3d 1272, 1290 (11th
Cir. 2011).  "[T]he only question for a federal habeas court is whether the

state court's determination is objectively unreasonable."  *Id.*

### Ground 1:  Trial Court Error – No Factual Basis

In his first claim, Stocker argues the trial court denied him due process by not establishing a factual basis for the offense of attempted armed burglary, rendering his plea involuntary.  ECF No. 1 at 5-6.  The state post-conviction court summarily denied this claim, making the following findings:

> Defendant argues that he should be permitted to withdraw his plea because the Court failed to receive "any factual information establishing the elements of attempted armed burglary of a dwelling" prior to accepting the plea.  The crux of Defendant's claim is that section 790.001(13), Florida Statutes, excludes a common pocketknife from the definition of "weapon."  Defendant argues that because the affidavit of probable cause states that he had two pocketknives in his pocket, he "could not have, as a matter of law, been armed during the commission of the attempted burglary," and therefore, he "could not have committed the crime of attempted armed burglary."  Defendant alleges that "had he known that there existed no factual basis for the attempted armed burglary charge [and] that he could not [as a matter of law] have been convicted of such, he would not have entered into the plea agreement and would have proceeded to trial."

> A defendant "can challenge the factual basis for his plea in a rule 3.850 motion."  Franklin v. State, 645 So. 2d 166, 166 (Fla. 4th DCA 1994).  "Even though a trial court fails to determine a factual basis for a plea, however, the plea will not be set aside after its acceptance absent a showing of prejudice or manifest injustice."  Sherwood v. State, 734 So. 2d 1050, 1051 (Fla. 1st DCA 1988).

Section 790.001(13), Florida Statutes, excludes a "common pocketknife" from the definition of "Weapon." However, "the question of whether a knife falls within the exception is not a legal conclusion, but remains a question for the fact finder." F.R. v. State, 81 So. 3d 572, 573 (Fla. 3d DCA 2012). "It is common knowledge that in certain circles pocket knives are used by assailants with deadly weapon effect . . . ." State v. Nixon, 295 So. 2d 121, 122 (Fla. 3d DCA 1974). An arrest affidavit may sufficiently show the factual basis for entry of a plea. See Saint Aime v. State, 723 So. 2d 874, 875 (Fla. 3d DCA 1998).

In this case, the arrest report and affidavit of probable cause were filed in the record on March 9, 2012, nearly a year before Defendant entered his plea. The affidavit of probable cause states, in relevant part:

> Stocker then climbed a stairwell to the residence with the intent to unlawfully enter the residence until confronted at gun point by numerous law enforcement officers. . . . After Stocker was taken into custody, a second victim [name omitted] emerged from the residence. Stocker made spontaneous utterances to [the victim], stating, "These mother[*****]s are heroes because I was here to filet your fat ass." Stocker said these remarks on two occasions and then indicated to [the victim] that he was also going to kill her grandson, with whom she resided. Stocker made several more utterances in the presence of several deputies indicating that he was at [the victim's] residence to kill her and that he was going to wait for her grandson to come home, at which time he was going to kill him as well. . . . Stocker indicated he had tried to open one of the door's [sic] at [the victim's] residence, but because it was locked, he was not able to make entry. A search of Stocker's person located two pocket knives in his right front pants pocket.

The affidavit of probable cause shows a factual basis for entry of the plea.  Further, section 4.8 of the plea agreement states that "I have reviewed the facts of my case(s) with my attorney and I agree and stipulate there are sufficient facts available to the State to justify my plea of guilty or nolo contendere to the charge(s)."  Section 7 of the agreement states as follows:  "FACTUAL BASIS FOR PLEA:  The arrest report or offense report or probable cause affidavit which is a part of the court record filed with the clerk of the court is hereby incorporated by reference and agreed to by the defendant as a factual basis for the plea."  Directly below that statement the document contains Defendant's acknowledgment that he read and understood the contents of the document, followed by his signature.

At the plea hearing held on February 14, 2013, the Court specifically found that "there is a factual basis for acceptance of the plea." (Tr. 25)  Defendant confirmed, under oath, that he had read, understood, and signed the plea agreement.  (Tr. 24)  Moreover, Defendant stated, under oath, "I don't want to waste nobody's time going on trial for something I know I did."  (Tr. 23)  Defendant also averred:  "I don't wish to go to trial."  (Tr. 30)

Having considered the affidavit of probable cause, the written plea agreement, and Defendant's sworn statements at the plea hearing, the Court finds no prejudice or manifest injustice that would entitle Defendant to withdraw his plea. Accordingly, this claim is denied.

Ex. F at 83-85 (footnotes omitted).  On appeal, the First DCA affirmed

without a written opinion.  This constitutes a ruling on the merits and is

entitled to AEDPA deference.  *See* 28 U.S.C. § 2254(d); Harrington, 562

U.S. at 98-100.

The record supports the findings and conclusions of the state post-conviction trial court.  In particular, when Stocker entered his plea, he acknowledged that he had read, understood, and signed the written plea agreement.  Ex. A at 200.  As the state court found, the plea agreement specifically incorporates by reference, as the factual basis for the plea, the arrest report or probable cause affidavit.  *Id.* at 95, 98; *see id.* at 39-40 (Arrest Report and Statement of Probable Cause).  During the plea colloquy, the judge found "there is a factual basis for acceptance of the plea."  *Id.* at 201.  Moreover, as the state court found, Stocker affirmatively stated he did not want to go to trial for something he knows he did.  Ex. A at 199.  Representations made during the plea colloquy carry a strong presumption of verity.  *See* Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.").

Stocker has not shown that the state court's rejection of this claim involved an unreasonable application of clearly established federal law or that it was based on an unreasonable determination of the facts.  *See* 28

U.S.C. § 2254(d)(1)-(2).  Accordingly, this claim should be denied.

## Ground 2:  IAC – Viable Defense

In his second claim, Stocker argues his trial counsel provided

ineffective assistance by not advising him that he had a viable defense

because his two common pocketknives did not meet the statutory definition

of "weapon."  ECF No. 1 at 6-7.  The state post-conviction trial court

summarily denied the claim, making the following findings:

> Defendant argues that "whether or not the common
> pocket knives here were weapons is a jury question; evidence
> on the face of the record that they were not weapons but
> common pocket knives certainly demonstrates a viable defense
> to the charge of attempted *armed* robbery."  On that basis,
> Defendant alleges that his attorney failed to investigate this
> "viable defense" and advise him that "the facts of the case
> demonstrated [a] reasonable probability that a jury would have
> been unable to find that he was armed during the attempted
> burglary" and that had he been so advised, he "would not have
> pled guilty to any of the crimes charged and would have
> proceeded to trial."

> To be successful on an ineffective assistance of counsel
> claim, a defendant must demonstrate that counsel's
> performance was both (1) deficient and (2) prejudicial to the
> defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).
> When an ineffective assistance claim arises in a case
> concerning a plea bargain, in order to satisfy the prejudice
> prong of Strickland, the defendant "must show that there is a
> reasonable probability that, but for counsel's errors, he would
> not have pleaded guilty and would have insisted on going to
> trial."  Nelson v. State, 996 So. 2d 950, 952 (Fla. 2d DCA 2008)
> (internal quotations and citations omitted).  "[I]n determining
> whether a reasonable probability exists that the defendant

would have insisted on going to trial, a court should consider
the totality of the circumstances surrounding the plea, including
such factors as whether a particular defense was likely to
succeed at trial, the colloquy between the defendant and the
trial court at the time of the plea, and the difference between
the sentence imposed under the plea and the maximum
possible sentence the defendant faced at a trial." Grosvenor v.
State, 874 So. 2d 1176, 1181-82 (Fla. 2004). "Where a
defendant enters a plea and swears that he is satisfied with his
counsel's advice, he may not later attack counsel's
effectiveness for failure to investigate or defend the charge."
Clift v. State, 43 So. 3d 778, 779 (Fla. 1st DCA 2010). "A
defendant is bound by his sworn answers during a plea
colloquy." Thompson v. State, 50 So. 3d 1208, 1211 (Fla. 4th
DCA 2010).

        Defendant's claim focuses on the "armed" element of his
attempted burglary conviction. However, as stated previously,
the affidavit of probable cause contains a factual basis for
Defendant's entry of his plea. Specifically, the affidavit
indicates that Defendant intended to use the knives in his
possession to "filet" a victim and killer her and her grandson,
but he was unable to gain entry into the victim's locked
residence to do so. Consequently, based on the affidavit of
probable cause, the Court cannot find that counsel performed
deficiently by not advising Defendant, as he suggests, that
there was a "reasonable probability that a jury would have been
unable to find that he was armed during the attempted
burglary."

        Moreover, Defendant specifically certified in section 4.2 of
his plea agreement that "I understand that I am giving up the
. . . right to present any and all defenses I may have." Further,
during the plea colloquy, Defendant confirmed that he had read,
understood, and signed the plea agreement. (Tr. 24)
Defendant also confirmed that he was satisfied with his
attorney's representation; his attorney had answered all of his
questions; and no one had forced, threatened, or coerced him
into entering the plea. (Tr. 24) Moreover, Defendant stated, "I

> don't want to waste nobody's time going on trial for something I
> know I did." (Tr. 23) Defendant further averred, "I don't wish to
> go to trial." (Tr. 30) Even if counsel somehow performed
> deficiently, after considering the totality of the circumstances
> surrounding the plea, including the affidavit of probable cause,
> the plea colloquy, and that the sentenced imposed under the
> plea agreement is significantly less than the maximum possible
> sentence Defendant faced at a trial, the Court finds the
> Defendant has not established the requisite prejudice to permit
> withdrawal of his plea. Accordingly, this claim is denied.

Ex. F at 86-88. On appeal, the First DCA affirmed without a written

opinion. This constitutes a ruling on the merits and is entitled to AEDPA

deference. *See* 28 U.S.C. § 2254(d); Harrington, 562 U.S. at 98-100.

The record and Florida law supports the findings and conclusions of

the state post-conviction trial court. In particular, as the state court

explained in denying the first claim, although section 790.001(13), Florida

Statutes, excludes "common pocketknife" from the definition of "weapon," a

jury may nevertheless find a common pocket knife constitutes a deadly

weapon in the context of a particular case. *See, e.g.*, L.B. v. State, 700 So.

2d 370, 372 (Fla. 1996); Walls v. State, 730 So. 2d 294, 294-95 (Fla. 1st

DCA 1999); F.R. v. State, 81 So. 3d 572, 573 (Fla. 3d DCA 2012). As the

Third DCA has explained, in a case cited by the state post-conviction court:

> Obviously the legislature, by excepting common pocket knives
> from the category of weapons, the carrying of which would be a
> crime, did so in order that the carrying of a common pocket
> knife by a citizen should not constitute a crime, in view of the

general custom of people to carry such knives for convenience and useful purposes unrelated to any criminal intent or activity.

But that does not mean that a pocket knife cannot be a deadly weapon.  Whether an object used as a weapon in an assault is a deadly weapon is a factual question to be resolved by the finder of facts at trial, and is to be determined upon consideration of its likelihood to produce death or great bodily injury.  It is common knowledge that in certain circles pocket knives are used by assailants with deadly weapon effect as frequently, if not more frequently than are firearms.

Nixon, 295 So. 2d at 122 (citations omitted).  Thus, as the state court determined, defense counsel did not perform deficiently by not advising Stocker that a "reasonable probability" existed that "a jury would have been unable to find that he was armed during the attempted burglary."

Moreover, as also discussed in the analysis of Ground 1, *supra*, the transcript of the plea hearing and the plea agreement itself support the state court's findings.  In particular, the record supports the findings that Stocker did not want to go to trial, was satisfied with the services of his attorney, understood he was giving up the rights "to trial by jury" and to present "any and all defenses" he may have, and entered the plea voluntarily.  Ex. A at 95, 200.  On this record, it was not unreasonable for the state court to conclude defense counsel's performance was not deficient.

Stocker has not shown that the state court's rejection of this claim

involved an unreasonable application of clearly established federal law or

that it was based on an unreasonable determination of the facts.  *See* 28

U.S.C. § 2254(d)(1)-(2).  Accordingly, this claim should be denied.

### <u>Ground 3</u>:  Trial Court Error and IAC – Right to Appeal

In his third claim, Stocker argues his plea is involuntary because, due

to trial court error and IAC, he did not know he was giving up his right to

appeal.  ECF No. 1 at 9.  Respondent does not address this ground.  *See*

ECF No. 26.  Regardless, the state post-conviction trial court summarily

denied the claim, making the following findings:

> Defendant alleges that his plea is involuntary because "neither
> plea counsel nor the trial court notified [him] that by entering a
> guilty plea he was relinquishing his right to appeal the
> judgment."  Defendant also alleges that "he was never made
> aware that he would be unable to appeal the issue regarding
> his innocence as to the armed burglary charge."  Defendant
> alleges that had he been so informed he "would not have
> entered into the plea agreement and would have proceeded to
> trial."
>
> Defendant certified in section 4.2 of his plea agreement
> that he understood he was giving up the "[r]ight to appeal all
> matters including the issue of guilt or innocence."  Indeed,
> Defendant admits in his motion that he "sign[ed] a preprinted
> waiver of rights form explaining on its face the particular rights
> relinquished by entering into the plea (including his right to
> appeal the judgment)."  Moreover, as previously stated,
> Defendant confirmed, under oath, that he had read,
> understood, and signed the plea agreement.  (Tr. 24)  During
> the plea colloquy the Court asked Defendant, "Do you have any
> questions or concerns?  Do you understand the plea

agreement?"  (Tr. 22)  Defendant responded that his "only question" was whether the Court would sentence him that day, and his "only concern" was for the Court to "take into consideration" his "remorse for, you know, all that – that has taken place and the position I was in when I – when I committed the crime.  I was not, you know, understanding the severity of what I did but I did what I did and I'm guilty of that. And, you know, I don't want to waste nobody's time going on trial for something I know I did."  (Tr. 23)

Even if counsel somehow performed deficiently, after considering the totality of the circumstances surrounding the plea, including the plea colloquy and that the sentence imposed under the plea agreement is significantly less than the maximum possible sentence the defendant faced at a trial, the Court finds that Defendant has not established the requisite prejudice to permit withdrawal of his plea.  Similarly, as to Defendant's claim that the Court failed to advise him that by entering the plea he was waiving his right to appeal the judgment, the Court finds no prejudice or manifest injustice entitling Defendant to withdraw his plea.  Accordingly, this claim is denied.

Ex. F at 88-89.

Again, the record supports the findings of the state post-conviction

trial court.  The plea agreement specifically provides that Stocker

understood he was giving up, among other things, the "[r]ight to appeal all

matters including the issue of guilt or innocence."  Ex. A at 95.

Stocker has not shown that the state court's rejection of this claim

involved an unreasonable application of clearly established federal law or

that it was based on an unreasonable determination of the facts.  *See* 28

U.S.C. § 2254(d)(1)-(2).  Accordingly, this claim should be denied.

## Conclusion

Based on the foregoing, Petitioner Brandon Michael Stocker is not entitled to federal habeas relief.  The § 2254 petition (ECF No. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to

whether a certificate should issue by objections to this Report and Recommendation.

Leave to appeal in forma pauperis should also be denied. *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### **Recommendation**

It is therefore respectfully **RECOMMENDED** that the Court **DENY** the § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on April 6, 2018.

**S/  Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.